802 F.2d 459
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DAVID L. SMITH, Petitioner
v.
MUNICIPAL COURT OF FRANKLIN COUNTY, CITY OF COLUMBUS, OHIO,
Respondents.
 No. 86-3100.
 United States Court of Appeals, Sixth Circuit.
 Aug. 11, 1986.
 
 BEFORE: LIVELY, Chief Judge, and KENNEDY and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Habeas corpus petitioner David Smith appeals the district court's denial of his petition based on his claim of ineffective assistance of counsel with respect to a state court misdemeanor conviction.
 
 
 2
 We set out briefly the essential facts as related by the Ohio Court of Appeals which denied Smith's appeal after conviction for receiving stolen property.
 
 
 3
 The evidence indicates that two police officers in a cruiser observed a small station wagon parked at an unusual location on an embankment adjacent to the west side of the Olentangy River. Thinking that perhaps fishermen were involved, the officers made no further investigation at that time. Shortly thereafter, however, they observed the same station wagon loaded with what appeared to be air conditioner evaporator coils. Knowing that there had been a problem of theft of similar coils from the adjacent Summer & Company yard, the officers proceeded to stop the vehicle. Defendant was a passenger in the vehicle, which another person, Keller, was driving. Keller told the officers that he had gotten the coils out east from Ryan Homes. However, both defendant and Keller agreed to accompany the officers to the Summer & Company premises, which were located across the river from the point at which the officers had first seen the station wagon.
 
 
 4
 At the Summer & Company yard, the officers ascertained that some similar coils were missing. In addition, a hole was found in a fence separating the Summer & Company yard from the river. Both defendant's and Keller's pants were wet from the knee down, as were their shoes and socks.
 
 
 5
 Defendant told the officers that he was assisting Keller with the coils at his request that morning to remove some steel off of the coils. Defendant gave similar testimony at trial.
 
 
 6
 There was further testimony that the evaporator coils were new, but apparently defective . . . [and] that similar coils belonging to Summer & Company were missing from the yard, having been brought in the previous afternoon. An employee of Summer & Company testified that there should not be any similar defective evaporator coils at any other location in the vicinity.
 
 
 7
 (J/A 20-21 as quoted in the magistrate's report and recommendation).
 
 
 8
 Smith was to be represented at trial by a public defender, Benton, who received the case two weeks prior to trial. Mr. Benton had no prior criminal trial experience and had just begun work for the public defender's office. Benton's preparation for the trial consisted mainly in a review of the file, which included background information on Smith, petitioner's version of what happened, and the name and address of the codefendant, Keller. Benton did not meet with petitioner until the morning of the day of trial. Petitioner at that time refused a plea bargain. When Benton sought and was refused a continuance by the trial judge, he advised Smith that he could still plead to a lesser charge. Smith chose the trial.
 
 
 9
 Another case was slated for trial that day by an experienced public defender, Mayton. The trial court scheduled the Smith trial to begin that afternoon instead of Mayton's case. Because of Benton's inexperience, Mayton agreed to act as Smith's lead counsel. During the several hours before trial, Mayton and Benton interviewed petitioner's codefendant, who agreed to testify for Smith. The defense attorneys also talked with the assistant prosecutor, read the complaint, and reinterviewed petitioner.
 
 
 10
 The defense "team" again sought a continuance before trial, which was refused. The court agreed, however, that if anything came up during trial for which defense counsel was unprepared, the court would consider anew a continuance to enable counsel an opportunity to contact and interview the witness or witnesses.
 
 
 11
 Counsel, during trial, did not attempt to subpoena any witnesses, although they talked to several who might have some general knowledge about the type of coils at issue. Trial adjourned after beginning during the afternoon, and it was then discovered that a conflict of interest was present because Smith's codefendant, Keller, was also going to be represented by the public defender's office. All contact withthe codefendant then ceased. Defense counsel and petitioner spent the remainder of the evening researching and trying to find witnesses.
 
 
 12
 The next day at trial Mayton called the codefendant on Smith's behalf. Upon advice of his newly appointed counsel, Keller, the codefendant, invoked the fifth amendment. Mayton moved for a mistrial on the ground that he had promised the jury in his opening statement a substantial defense that which he could not now deliver.[1] The motion for mistrial was denied as were further requests for a continuance. Petitioner then took the stand, denied participation in any theft and claimed lack of knowledge as to any theft, or knowing that the property was stolen. The jury returned a guilty verdict. Smith was unsuccessful in his appeal to the Ohio appellate courts.
 
 
 13
 The United States Supreme Court has recently dealt at length with claims of ineffective assistance of counsel. In one case, United States v. Cronic, 466 U.S. 648 (1984), the Court required a showing of "an actual breakdown of the adversarial process during the trial of the case." Id. at 658 (emphasis added). In the other, it was stated that even "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nevertheless be effective," Strickland v. Washington, 466 U.S. 668, 681 (1984), adding that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The latter required a showing of "errors so serious that counsel was not functioning as the 'counsel [constitutionally] guaranteed"' with "a strong presumption" to the contrary. Id. at 687, 689.
 
 
 14
 The district court in this case carefully analyzed the appropriate standards to be applied in this case in light of Cronic and Strickland. For the reasons stated by Judge Holschuh, we find that petitoner Smith has failed to establish a constitutional deprivation under all the circumstances.
 
 
 15
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Mayton acknowledged at some point in these proceedings that he fully anticipated that the codefendant would take the fifth. According to the City's brief, this tactic was commonplace in Franklin County based upon the theory that the jury may attribute sole guilt to the person refusing to testify